UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      (IN CHAMBERS) - DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (Dkt. 92, Filed September 18, 2015)

## I.      INTRODUCTION

On May 28, 2014, plaintiff Beverly Gooch ("Gooch") filed the operative Third
Amended Complaint ("TAC") against defendants American Eagle Airlines, Inc.
("American Eagle"), and Does 1 through 10 (collectively, "defendants"). Dkt. 51. The
TAC asserts claims against defendants for: discrimination in violation of the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq.; two separate
hostile work environment claims, in violation of Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S.C. §§ 2000e, et seq.; retaliation in violation of the ADEA;
retaliation in violation of public policy under California law; intentional infliction of
emotional distress; negligent infliction of emotional distress; concealment; damages; and
attorney's fees. Id.

On October 6, 2014, the Court granted American Eagles' motion to dismiss
plaintiff's claims for hostile work environment under Title VII, intentional infliction of
emotional distress, retaliation in violation of public policy, and concealment. Dkt. 69.
On August 19, 2015, plaintiff voluntarily dismissed her claim for negligent infliction of
emotional distress. Dkt. 85. Accordingly, plaintiff's remaining claims against defendants
are for discrimination in violation of the ADEA and retaliation in violation of the ADEA.
In brief, plaintiff alleges that American Eagle wrongfully failed to award her a promotion
in favor of a younger employee. Plaintiff also alleges that American Eagle failed to
award her a promotion in retaliation for an EEOC complaint she filed against American
Eagle in 2010.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|----------|--------------------------|------|-------------------|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

On September 18, 2015, American Eagle filed the instant motion for summary jdugment. Dkt. 92. On November 2, 2015, plaintiff filed an opposition, Dkt. 102, and on November 9, 2015, American Eagle filed a reply, Dkt. 103. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.     BACKGROUND[1]

### A.     Plaintiffs Employment History

On March 8, 2004, American Eagle hired plaintiff as a Fleet Service Clerk (also known as a Catering Service Clerk or Cabin Clerk). Defendants' Statement of Uncontroverted Facts ("DSUF") ¶ 13; Plaintiff's Statement of Uncontroverted Facts ("PSUF") ¶ 13. Plaintiff was 48 years old when she was hired for this position. Id. As a fleet service clerk, plaintiff cleaned plane cabin interiors, stocked the plane's supplies, and installed cabin furnishings as needed. DSUF ¶ 14; PSUF ¶ 14. On March 14, 2005, American Eagle hired plaintiff as an administrative assistant in its Ramp Department. DSUF ¶ 15; PSUF ¶ 15. Plaintiff was 49 years old when she was hired for this position. Id. The Ramp Department oversees the loading and unloading of bags as well as catering and marshalling planes while they are stationed in the airport. DSUF ¶ 16; PSUF ¶ 16.

In her resume, plaintiff stated that, among other things, her job responsibilities as an administrative assistant included: entering data into American Eagle's payroll system,

---

[1] Except where noted, the following facts are undisputed. The parties have raised several objections to the evidence offered in support of and in opposition to American Eagle's motion for summary judgment. The Court addresses several of these objections infra. To the extent the Court does not rely on any objected-to evidence in ruling on American Eagle's motion, those objections are OVERRULED AS MOOT. In addition, at numerous points in her papers, plaintiff states that facts are disputed and cites to various pieces of evidence in the record. However, it appears that several of these documents have not in fact been submitted into evidence. To the extent any of plaintiff's objections are not supported by evidence in the record, her objections are OVERRULED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

ensuring that the correct pay rates are reflected in the payroll system, uploading electronic copies of invoices, formatting bid schedules, inputting changes in an American Eagle computer database for employees who take a leave of absence, providing guidelines to employees regarding the Family Medical Leave Act ("FMLA"), ordering supplies, general typing, posting job vacancies to the American Eagle website, filing telephone and mail correspondence, administrative work to maintain files, inputting data in spreadsheets, assisting employees in completing paperwork for airport ID badges, providing workers compensation forms to employee, and contacting vendors.  Gooch Deposition, Ex. 6.  Plaintiff does not dispute that as an administrative assistant her work involved numerous clerical responsibilities; however, she contends that she had a number of supervisory responsibilities as well.  See PSUF ¶ 18.  For example, she states that she implemented company policy regarding FMLA leave, assisted other American Eagle departments with ensuring that company policies were complied with, trained some of the managers and employees in the Ramp Department regarding use of American Eagle's payroll system and how to fill out paperwork, worked closely with the Los Angeles World Airport ("LAWA") and Transportation Security Administration ("TSA") to ensure compliance with security requirements, and supervised new hires to ensure that they were in compliance with various corporate and security requirements.  Id.

Prior to working for American Eagle, plaintiff worked as an office manager for Stokes Chiropractic Clinic in Los Angeles.  DSUF ¶ 19; PSUF ¶ 19.  According to plaintiff's resume, in this position her job responsibilities consisted of: "heavy cash-check transactions, expense reports, invoices, charts record keeping, answering phones, filing, medical biller, schedule appointments, ordering supplies and time keeping for office staff."  DSUF ¶ 20; PSUF ¶ 20.  Plaintiff also contends that she supervised office staff in this position.  PSUF ¶ 20.  Prior to working at Stokes Chiropractic Clinic, plaintiff worked as a travel agent.  DSUF ¶ 21; PSUF ¶ 21.  In this position she did not supervise any employees.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

**B.      The Shift Manager On Duty Position**

On or about November 2012, a position as a Shift Manager On Duty ("SMOD") became available at American Eagle's LAX facility.  DSUF ¶ 27; PSUF ¶ 27.  The SMOD position was a supervisory position that entailed managing the shifts of the Fleet Service Crew to ensure that Ramp Department operations were carried out in a timely and efficient manner.  See DSUF ¶ 28; PSUF ¶ 28.

The responsibilities of the SMOD position included, but were not limited to: leading and coordinating the activities of workers; interpreting company policies; enforcing safety regulations; analyzing and resolving work-related problems; initiating or suggesting plans to motivate workers to achieve work goals; recommending or initiating personnel actions, such as  promotions, transfers, discharges, and disciplinary measures; training new workers; maintaining time and attendance records as well as personnel files and performance records; conferring with other supervisors and/or managers to coordinate activities of American Eagle departments; conferring with workers' representatives to resolve grievances; and operating company equipment and/or vehicles. DSUF ¶ 29; PSUF ¶ 29.  In addition, the SMOD was expected to be adept in the activities of the workers he or she supervised and possess general knowledge of the activities of his or her workers.  Id.

The SMOD position also involved a number of "operational" responsibilities, including: interpreting specifications, blueprints, and/or job orders to workers and assigning duties; establishing or adjusting work procedures to meet production schedules; recommending measures to improve production methods, performance, and the quality of the product, and suggesting changes in working conditions to increase efficiency; ensuring adherence to company safety standards.  DSUF ¶ 30; PSUF ¶ 30.  And the position involved the following "administrative" responsibilities: supervising and coordinating the activities of workers; determining procedures, work schedules, and expediting workflow; issuing written and oral instructions to workers; assigning duties and examining employee work for completeness and conformance to policies and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|----------|-------------------------|------|-------------------|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

procedures; studying and standardizing procedures to improve the efficiency of subordinates; preparing composite reports based on the individual reports of subordinates; performing or assisting subordinates in the performance of their duties; and initiating or suggesting plans to motivate workers to achieve work goals. DSUF ¶ 31; PSUF ¶ 31.

In evaluating applicants for the SMOD position, American Eagle largely relied upon a list of qualifications criteria which was set forth in the job posting for the position. DSUF ¶ 32; PSUF ¶ 32. These criteria included:

- College degree or equivalent experience required
- Strong managerial skills
- Previous supervisory experience and knowledge of American Airlines budgeting, policies, and procedures desired
- Familiarity with functional area
- Strong interpersonal, communication, and PC skills
- Ability to manage management, non-management, and contract labor work groups
- Ability to concurrently handle multiple responsibilities
- Ability to read, write, fluently speak, and understand the English language
- When applicable, the ability to work rotating shifts, nights and weekends
- Must fulfill FAA criminal background check
- Must be able to secure appropriate airport authority and/or US Customs security badges, if applicable

Id. In addition, one of American Eagle's senior managers at this time testified in his deposition that, while it was not a formal policy, it was considered a "best practice" to review an applicant's personnel file and contact their former managers. Ricketts Deposition, 94: 18-20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

In November 2012, plaintiff, one of plaintiff's coworkers, Habte Siyoum ("Siyoum"), and six other candidates applied for the SMOD position. DSUF ¶ 35; PSUF ¶ 35. At the time she applied for this position, plaintiff was 56 years old. DSUF ¶ 43; PSUF ¶ 43. Siyoum was 32 years old. DSUF ¶ 44; PSUF ¶ 44. The other applicants' ages ranged from 25 to 57 years old. DSUF ¶ 43; PSUF ¶ 43. The SMOD position reported to Arlene Delafuente ("Delafuente"), who became a Ramp Manager at American Eagle's LAX facility in either October or November of 2012. DSUF ¶ 37; PSUF ¶ 37. American Eagle contends that Delafuente was the ultimate decision-maker regarding who to hire for the SMOD position in 2012. DSUF ¶ 38. Plaintiff disputes that Delafuente was the sole decision-maker regarding who to hire for the SMOD position. Instead, she contends that another American Eagle manager, Gregory Ricketts ("Ricketts") was involved in the hiring process. PSUF ¶ 38. The job listing for the SMOD position was posted under Ricketts name, Guernsey Decl., Ex. A, and Ricketts acknowledges that he helped Delafuente determine who to interview for the position, Ricketts Deposition, 83:8-10. Furthermore, Ricketts testified during his deposition that he consulted with Delafuente regarding the SMOD position and advised her to research the applicants by, for example, calling their former managers and reviewing their personnel files. Ricketts Deposition, 91:16-92:20, 95:13-19.

Delafuente elected to interview four candidates for the SMOD position, including plaintiff and Siyoum. DSUF ¶ 42; PSUF ¶ 42. On November 19, 2012, plaintiff was interviewed by Ricketts and Delafuente. DSUF ¶ 46; PSUF ¶ 46. According to Delafuente, during her interview, plaintiff answered the interview questions as if she was just "going through the motions." Delafuente Decl. ¶ 11. Delafuente states that, in her opinion, during his interview Siyoum appeared to be enthusiastic about the SMOD position. Id. Ultimately, on December 12, 2012, Delafuente informed plaintiff that she had not been selected for the SMOD position; rather, Siyoum was selected for the position. DSUF ¶ 51; PSUF ¶ 51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'   JS-6**

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

Siyoum was hired by American Eagle in February of 2001 as a Fleet Service Clerk. DSUF ¶ 61; PSUF ¶ 61.  In May of 2008, Siyoum was hired as a Crew Chief.  Id. According to Delafuente, based on Siyoum's work experience, application, resume, and interview, as well as her own experience as a shift manager in the Ramp Department, she understood Siyoum to have extensive relevant experience.  This experience included: handling a multitude of management issues including daily management of Fleet Service Clerks; resolving disputes between Fleet Service Clerks; organizing the Fleet Service Clerks' shifts with the SMOD; and, resolving problems on the ramp, such as missing equipment, employment disputes, changes in flight schedules, lost baggage, and equipment malfunctions.  Delafuente Decl. ¶ 8.  Delafuente also understood that if she chose Siyoum for the SMOD position he would be supervising many of the same crew members he had previously supervised, just in a different capacity.  Id.  Finally, Delafuente understood that Siyoum had volunteered for the Manager On Duty Pool ("MOD Pool"), whereby he volunteered to fill in for the SMOD on numerous occasions in order to learn aspects of the position.  DSUF ¶ 65; PSUF ¶ 65.  Based on these and other qualifications, Delafuente believed Siyoum to be the most qualified candidate for the SMOD position.  Id. ¶ 7.  Plaintiff disputes Delafuente's description of Siyoum's qualifications to the extent that Delafuente states that Siyoum was the most qualified candidate for the SMOD position.  See generally PSUF.  Rather, plaintiff contends that she was the most qualified candidate.  See id.

Plaintiff alleges that she was not afforded a meaningful opportunity to participate in the MOD Pool because of her age.  DSUF ¶ 73; PSUF ¶ 73.  The MOD Pool is a pool of employees who express their desire to stand in for the SMOD if that manager is unable to work a shift.  DSUF ¶ 74; PSUF ¶ 74.  The SMOD and other American Eagle department managers take voluntary requests by employees who would like to participate in the MOD Pool.  DSUF ¶ 75; PSUF ¶ 75.  American Eagle employees were informed that if they were interested in participating in the MOD Pool they should let their managers know.  DSUF ¶ 77; PSUF ¶ 77.  In July 2010, Ricketts offered plaintiff the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    **'O'   JS-6**

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

opportunity to participate in the MOD Pool. DSUF ¶ 79.[2] Subsequently, plaintiff received an email from another of her supervisors, Cindy Grover ("Grover"), encouraging her to volunteer for the MOD Pool and to let Grover know if she wished to participate. DSUF ¶ 82; PSUF ¶ 82. In response to Grover's email, plaintiff replied: "As for the MOD pool, I haven't made the decision yet if I will participate, but I will keep it in mind." DSUF ¶ 83; PSUF ¶ 83. Plaintiff never accepted Ricketts' offer to be placed in the MOD Pool and never had any further conversation with Ricketts, or anyone else at American Eagle, regarding being placed in the MOD Pool. DSUF ¶ 84.[3] At some point in 2010, plaintiff learned that she had not been placed in the MOD Pool. Gooch Deposition, 241:17-20.

In 2015, plaintiff was promoted by American Eagle to a new position, Operations Improvement Supervisor. Gooch Decl. ¶ 15. According to the job posting for this position provided by plaintiff the requirements for this job include, among others: knowledge of FMLA, experience working with workers compensation, and budgeting experience. Gooch Decl., Ex. D.

---

[2] Plaintiff states that this fact is disputed. PSUF ¶ 79. In support of this position plaintiff cites two pieces of evidence: (1) a portion of her deposition testimony in which she admitted that Ricketts offered her the opportunity to participate in the MOD Pool, Gooch Deposition, 295:2-7 ; and (2) a document entitled "Gooch Disclosure 50" which is an email from plaintiff to Ricketts thanking him for his offer to include her in the MOD Pool. Riordan Decl., Ex. E. This evidence does not dispute defendant's proposed fact, but rather confirms it. Accordingly, the Court considers this fact undisputed.

[3] Plaintiff states that this fact is disputed and that she testified that she was not selected to be placed in the MOD Pool. PSUF ¶ 84. However, her testimony does not dispute the fact that she did not accept Ricketts' offer or have any further conversations with anyone at American Eagle regarding the MOD Pool. Accordingly, the Court treats this fact as undisputed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

### C.    Plaintiff's 2010 EEOC Complaint

On August 12, 2010, plaintiff filed an EEOC complaint against American Eagle. DSUF ¶ 93; PSUF ¶ 93.  Plaintiff never discussed her 2010 EEOC complaint or the fact that she had filed this complaint with anyone at American Eagle.  DSUF ¶ 94; PSUF ¶ 94.  In his deposition, Ricketts admitted that he had knowledge in 2012 that Plaintiff had filed an EEOC complaint against American Eagle.  Ricketts Deposition, 68:1-4.  Plaintiff believes that she was not hired for the SMOD position in retaliation for filing her 2010 EEOC complaint.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

## III.   ANALYSIS

### A.   Statute of Limitations

As an initial matter, American Eagle contends that plaintiff's claims are barred by the applicable statute of limitations.  Mot., at 13.  A civil action asserting claims pursuant to the ADEA must be filed within 90 days of receiving a right-to-sue notice from the EEOC.  29 U.S.C. § 626(e).  Here, plaintiff received her right-to-sue notice regarding her ADEA claims on February 4, 2014.  TAC ¶ 45.  Accordingly, she was required to file a complaint asserting these claims by May 4, 2014.  However, plaintiff did not file her TAC, asserting for the first time claims against American Eagle for violation of the ADEA, until May 28, 2014.  See Dkt. 51.  Plaintiff's complaint was therefore untimely.

Nonetheless, equitable considerations require that the Court toll the statute of limitations in this case.  On April 21, 2014, well within the 90-day statute of limitations period, and while plaintiff was proceeding *pro se*, plaintiff attempted to file a Second Amended Complaint ("SAC").  Dkt. 49.  In the SAC, plaintiff asserted claims against American Eagle for violation of the ADEA.  Id.  The Court ultimately rejected plaintiff's SAC because she had not properly requested leave to file an amended complaint.  Id. "The Supreme Court has allowed equitable tolling when the statute of limitations was not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

complied with because of **defective pleadings**, when a claimant was tricked by an adversary into letting a deadline expire, and when the EEOC's notice of the statutory period was clearly inadequate." Scholar v. Pac. Bell, 963 F.2d 264, 267-68 (9th Cir.1992) (emphasis added) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)); see also Burnett v. New York Central R. Co., 380 U.S. 424 (1965) (plaintiff timely filed a complaint in the wrong court); American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974) (plaintiff's timely filing of a defective class action tolled the limitations period as to the individual claims of purported class members).

Here, plaintiff made a good faith effort to comply with the ADEA's 90-day statutory period. However, as a result of a "defective pleading" she was unable to timely file her complaint asserting claims for violation of the ADEA. Under these circumstances, the Court cannot conclude that plaintiff "failed to exercise due diligence in preserving [her] legal rights." Irwin, 498 U.S., at 96. Accordingly, the Court finds that equitable tolling applies and plaintiff's claims are not barred.

**B.      Age Discrimination in Violation of the ADEA**

Pursuant to 29 U.S.C. § 623(a)(1), it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 174 (2009). Rather, at trial, a plaintiff carries the burden to prove that her age was the "but-for" cause of her employer's adverse employment action. Shelley v. Geren, 666 F.3d 599, 608 (9th Cir. 2012).

When evaluating claims for age discrimination under the ADEA, courts apply the three-stage burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Shelley, 666 F.3d at 608 (applying McDonnell Douglas test to ADEA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

claims); Pottenger v. Potlatch Corp., 329 F.3d 740, 745 (9th Cir. 2003) (same).  Under
this test, to survive summary judgment plaintiff must first establish a prima facie case of
age discrimination.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280-81 (9th
Cir.2000).  If she is successful, the burden of production shifts to American Eagle to
articulate a legitimate non-discriminatory reason for its adverse employment action.  Id.
at 1281.  If American Eagle offers such a reason, plaintiff must then offer evidence that
the purportedly non-discriminatory reason is pretext for age discrimination.  Id.

### 1.      Prima Facie Case

        To establish a prima facie case of age discrimination a plaintiff must produce
evidence that she was "(1) at least forty years old, (2) qualified for the position for which
an application was submitted, (3) denied the position, and (4) the promotion was given to
a substantially younger person."  France v. Johnson, 795 F.3d 1170, 1174 (9th Cir. 2015);
Shelley, 666 F.3d at 608 (same).

        Here, plaintiff was 56 years old when she applied for and was denied the SMOD
position.  DSUF ¶ 43; PSUF ¶ 43.  Therefore, she satisfies the first prong of her prima
facie case because she was at least 40 years old.

        Second, plaintiff appears to have been qualified for the position she applied for. To
satisfy this prong of her prima facie case, plaintiff must show that she "possessed the
requisite knowledge and experience" to compete for the position.  Whitman v. Mineta,
541 F.3d 929, 932 (9th Cir. 2008).  American Eagle argues that the SMOD position was
primarily a managerial position and that plaintiff's predominantly clerical experience as
an administrative assistant did not qualify her for the position.  Mot. at 16-17.  However,
it is undisputed that plaintiff had over eight years of experience working in the Ramp
Department.  DSUF ¶¶ 13, 15; PSUF ¶¶ 13, 15.  During this time, plaintiff likely gained
insight into the inner workings of the department and the managerial functions required
of the SMOD.  Furthermore, while the SMOD position entailed extensive managerial
responsibilities, it also involved "administrative functions," such as ensuring compliance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

with company policies and preparing reports, and required the SMOD to maintain time and attendance records as well as personnel files and performance records.  DSUF ¶¶ 29, 31; PSUF ¶¶ 29, 31.  As an administrative assistant, plaintiff would likely have had significant experience with these types of tasks.  Accordingly, the Court cannot find, as a matter of law, that plaintiff was not qualified for the SMOD position.

Turning to the third prong, plaintiff asserts that she suffered two adverse employment actions: (1) American Eagle's choice of another candidate for the SMOD position; and (2) not being selected to be placed in the MOD Pool.  As an initial matter, plaintiff has clearly suffered an adverse employment action with regard to the SMOD position.  She applied for the position and was passed over in favor of another employee.  Regarding the MOD Pool, however, plaintiff has failed to submit evidence that she suffered an adverse employment action.  Plaintiff admits that "[t]he MOD Pool is a pool of employees who **express their desire** to stand in for the [SMOD]."  PSUF ¶ 74 (emphasis added).  Similarly, plaintiff does not dispute that the SMOD and American Eagle department managers take "**voluntary requests** by employees who would like to participate in the MOD Pool."  Id. ¶ 75 (emphasis added).  Here, there is no evidence suggesting that plaintiff expressed her desire or volunteered to join the MOD Pool.  In fact, despite being offered the opportunity to volunteer for the MOD Pool and being encouraged to volunteer, plaintiff stated: "As for the MOD pool, **I haven't made the decision yet if I will participate**, but I will keep it in mind."  PSUF ¶ 83 (emphasis added).  Accordingly, plaintiffs contention that she was "not selected to be in the MOD Pool" mischaracterizes the evidence.  American Eagle did not make a decision "not to select" plaintiff for the MOD Pool.  Rather, plaintiff was required to volunteer for the program by informing her supervisors that she desired to join the MOD Pool; plaintiff failed to do this and therefore she was not included in the MOD Pool.  Therefore, plaintiff did not suffer an adverse employment action, but instead simply failed to take advantage of an opportunity the evidence shows was made available to her.  For these reasons, the Court finds that plaintiff has satisfied the third prong of her prima facie case as to the SMOD position, but not as to her placement in the MOD Pool.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'   JS-6**

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|----------|-------------------------|------|-------------------|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

Finally, Siyoum was 32 years old, or 24 years younger than plaintiff, when he was selected for the SMOD position. See DSUF ¶ 44; PSUF ¶ 44. Therefore, "the promotion was given to a substantially younger person." See France, 795 F.3d at 1174 ("We hold that an average age difference of ten years or more . . . will be presumptively substantial.").

Accordingly, plaintiff has produced evidence supporting a prima facie case of age discrimination based on American Eagle's decision not to hire her for the SMOD position.

### 2.    Legitimate Non-Discriminatory Reason

Once a plaintiff establishes her prima facie case, the burden shifts to the defendant to provide a facially legitimate, non-discriminatory explanation for its hiring decision. Shelley, 666 F.3d at 609. American Eagle contends that it did not hire plaintiff for the SMOD position because, based on his work experience, application, resume, and interview, American Eagle determined that Siyoum was the most qualified candidate for the position. Delafuente Decl. ¶ 7. Accordingly, American Eagle has provided a facially legitimate explanation for not hiring plaintiff.

### 3.    Showing of Pretext

Given that American Eagle has provided a facially legitimate, non-discriminatory reason for its hiring decision, the burden shifts back to plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual. "The plaintiff can prove pretext '(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer.' " Shelley, 666 F.3d at 609 (citing Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1124 (9th Cir. 2000)). Here, plaintiff provides no direct evidence that unlawful discrimination motivated American Eagle's hiring decision. Instead, she provides several arguments

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL     'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

based on circumstantial evidence, which she contends support an inference of age discrimination.  None of plaintiff's arguments is persuasive.

First, plaintiff argues that American Eagle has provided conflicting reasons for not selecting her for the SMOD position.  Opp'n., at 15.  Specifically, plaintiff contends that at different times American Eagle has explained its reason for not selecting plaintiff as either her lack of managerial experience or her lack of interpersonal skills.  Id. at 15-16.  Plaintiff also states that, during his deposition, Ricketts cited "complaints filed against plaintiff for harassing other employees, failure to get along with others, and for plaintiff being 'controlling' " as one of the reasons she was not hired for the SMOD position.  Id. at 16 (citing Ricketts Deposition, 41:10-19).

"[W]hen a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual." Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000); Hernandez v. Hughes Missile Sys. Co., 362 F.3d 564, 569 (9th Cir. 2004) (same).  However, in this case, plaintiff has failed to submit evidence that American Eagle's proffered explanations were in fact inconsistent.  First, plaintiff's argument misstates Ricketts' testimony. Ricketts never testified that American Eagle believed plaintiff was not qualified for the SMOD position based on the complaints filed against her; nor did he testify that American Eagle considered these complaints in evaluating plaintiff's application for the SMOD position.  Rather, Ricketts' testimony was in response to general questions regarding how other managers spoke to him about plaintiff.  See, e.g., Ricketts Deposition, 40:16-41:11 (Q: Have any of the ramp managers who supervised Ms. Gooch ever discussed Ms. Gooch to you? . . . Q: In what form or fashion did the ramp managers discuss Ms. Gooch to you?).[4]

---

[4] Even if Ricketts had testified that American Eagle considered these complaints in not hiring plaintiff, they are not inconsistent with American Eagle's other proffered reasons.  Instead, these complaints are merely specific examples of how plaintiff may have lacked interpersonal skills.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**           'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

Second, the other reasons offered by American Eagle are not inconsistent, but rather complementary.  Strong managerial skills and strong interpersonal skills were both listed as necessary qualifications for the SMOD position.  DSUF ¶ 32; PSUF ¶ 32. Plaintiff offers no reasonable basis for concluding that American Eagle could not have relied on both of these criteria in deciding not to hire her.  By contrast, in Dominguez-Cruz, plaintiff's cited authority, the employer initially stated that the plaintiff was being terminated as a result of a "restructuring plan" and expressly stated: "This reorganization is not a performance issue."  202 F.3d at 431.  The employer subsequently "denied that the plaintiff was discharged as a result of restructuring, instead claiming that 'Plaintiff was terminated for his repeated failure to abide by company policies and to commit to the team efforts as required.' "  Id.  The First Circuit held that, because the employer had "changed its reasons" for terminating the plaintiff, a jury could infer that the proffered reasons were pretextual.  Id. at 431-32.  Here, there is no evidence of a similar course reversal by American Eagle; rather, American Eagle consistently stated that plaintiff lacked the requisite qualifications and that Siyoum was the most qualified candidate.

Next, plaintiff argues that American Eagle's reasons for not hiring her were based on subjective measures.  Opp'n., at 18.  Plaintiff's argument is based on Delafuente's testimony regarding plaintiff and Siyoum's relative demeanors during their interviews, e.g., that plaintiff seemed to be just "going through the motions."  Id. at 18-19.  Courts have recognized that "subjective practices are particularly susceptible to discriminatory abuse and should be closely scrutinized."  Jauregui v. City of Glendale, 852 F.2d 1128, 1136 (9th Cir. 1988).  Nonetheless, plaintiff cites no authority suggesting that an employer may *never* use subjective criteria in evaluating applicants for a position.  See also Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995) ("[I]n many situations, [subjective criteria] are indispensable to the process of selection in which employers must engage") (citing Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072, 1075 (9th Cir. 1986)).  And plaintiff provides no basis for concluding that Delafuente's comments reflected an improper motive, let alone any consideration of plaintiff's age.  Moreover, Delafuente provided numerous non-subjective criteria for selecting Siyoum over plaintiff, such as their relative experience, skill sets, and knowledge of the SMOD position.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'   JS-6**

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|----------|--------------------------|------|-------------------|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

Finally, plaintiff contends that she was objectively a more qualified candidate than Siyoum and, therefore, the fact that he was promoted over her raises an inference that American Eagle's purported reasons for hiring Siyoum are pretextual.[5]  "Evidence of a plaintiff's superior qualifications, standing alone, may be sufficient to prove pretext." Shelley, 666 F.3d at 610 (citing Raad v. Fairbanks North Star Borough School Dist., 323 F.3d 1185, 1194 (9th Cir. 2003)).  However, under Ninth Circuit caselaw, in order to support an inference of pretext, the plaintiff's qualifications must be "clearly superior." Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1492 (9th Cir. 1995); see also Raad, 323 F.3d at 1194 ("[T]he fact that an employer hired a far less qualified person than the plaintiff naturally gives rise to an inference that the non-discriminatory explanation offered by the employer is pretextual.").  Accordingly, it is insufficient for a plaintiff merely to show evidence that she was qualified for the position at issue or that a reasonable employer could have hired her instead.

Here, drawing all reasonable inferences in favor of plaintiff, the most that could be said is that she and Siyoum were equally qualified for the SMOD position.  Plaintiff had worked for American Eagle since 2004, had knowledge of the inner workings of the Ramp Department, and was well-suited to many of the administrative and clerical duties of the SMOD position.  Siyoum, on the other hand, had worked for American Eagle since 2001, had experience managing a team of employees as a Crew Chief, and unlike plaintiff, had gained experience performing the duties of the SMOD by volunteering in the MOD Pool.  While a reasonable juror might conclude that plaintiff was qualified for the SMOD position, the evidence plaintiff provides is insufficient to support a finding that she was "clearly superior" to Siyoum.

---

[5] Plaintiff raises several additional arguments such as the fact that she trained other employees, including Siyoum, and that she maintained an exemplary performance history.  However, in effect, these arguments are only additional reasons why plaintiff believes she was objectively the more qualified candidate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

By contrast, in <u>Shelley</u>, the Ninth Circuit found that the plaintiff had presented circumstantial evidence of pretext based on his superior qualifications.  666 F.3d at 610. In particular, the court noted that plaintiff had "significantly more years of work experience," his "educational qualifications were superior," and his "resume identified more impressive and recent awards for on-the-job accomplishments."  <u>Id.</u>  Here, plaintiff had three years *fewer* experience working for American Eagle than Siyoum and it is undisputed that, between plaintiff and Siyoum, only Siyoum had actual experience filling in for the SMOD.  Therefore, plaintiff's evidence falls well short of that proffered by the plaintiff in <u>Shelley</u>.  <u>See also</u> <u>Doyle v. CT Corp. Sys.</u>, 2012 WL 161355, at *10 (N.D. Cal. Jan. 18, 2012) ("Unlike in <u>Shelley</u>, there is no evidence that Plaintiff had a better education, or more accolades than, the other [applicants] . . . [therefore] Plaintiff has not demonstrated that she has superior qualifications for a domestic sales position"); <u>Adetuyi v. City and County of San Francisco</u>, 63 F.Supp. 3d 1073, 1088 (N.D. Cal. 2014) ("Although [plaintiff] contests Ms. Batres' qualifications for the position . . . he has not demonstrated that his qualifications are 'clearly superior' to those of Ms. Batres"); <u>De Markoff v. Superior Court of California</u>, 2014 WL 2895200, at *7 (E.D. Cal. Jun. 25, 2014) ("It is not the responsibility of a jury in a discrimination case to decide which candidate of similar qualifications was better qualified.").

Therefore, plaintiff has not met her burden of raising a genuine dispute of material fact regarding whether American Eagle's reasons for failing to hire her for the SMOD position were pretextual.  Accordingly, plaintiff is not able to establish a claim for discrimination under the ADEA and the Court GRANTS American Eagle's motion for summary judgment on this claim.

### C.     Retaliation in Violation of the ADEA

As with claims for discrimination, claims for retaliation under the ADEA are evaluated under the three-stage <u>McDonnell Douglas</u> burden-shifting test.  <u>See</u> <u>Whitman</u>, 541 F.3d at 932.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'   JS-6**

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

### 1.    Prima Facie Case

To establish a prima facie case of retaliation under the ADEA, "a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the adverse employment action." Poland v. Chertoff, 494 F.3d 1174, 1179-80 (9th Cir. 2007). Here, plaintiff alleges that American Eagle failed to offer her the SMOD position out of retaliation for an EEOC complaint she filed against American Eagle in 2010.

As an initial matter, plaintiff has readily satisfied the first two prongs of her prima facie case. The filing of her EEOC complaint was a protected activity. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). And, as already stated, she suffered an adverse employment action when she was passed over for the SMOD position.

Regarding the third prong, American Eagle argues that plaintiff cannot establish a causal connection between her protected activity and the adverse employment action. Mot., at 21. Specifically, American Eagle argues that Delafuente, who it contends was the ultimate decision-maker regarding the SMOD position, had no knowledge of plaintiff's 2010 EEOC complaint when she selected Siyoum for the SMOD position. Id. at 21-22. However, even assuming that Delafuente was the sole decision maker, it is undisputed that Ricketts sat in on plaintiff's interview and consulted with Delafuente regarding the applicants for the SMOD position. Given that Ricketts admitted that he was aware of plaintiff's EEOC complaint in 2012, a jury could reasonably infer that he discussed the EEOC complaint with Delafuente during the hiring process.

Accordingly, plaintiff has established all three prongs of her prima facie case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL         'O'   JS-6

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

### 2.    Legitimate Non-Retaliatory Reason

American Eagle again explains that plaintiff was passed over for the SMOD position, not in retaliation for her EEOC complaint, but because American Eagle determined that Siyoum was the most qualified candidate for the position. Delafuente Decl. ¶ 7. As already stated, this is a facially legitimate explanation for not hiring plaintiff and therefore the burden shifts back to plaintiff to show that the proffered reason is pretextual.

### 3.    Showing of Pretext

"[If] plaintiff demonstrates a genuine issue of material fact as to whether the reason advanced by the employer was a pretext, then the retaliation case proceeds beyond the summary judgment stage." Coons v. Sec. of United States Dept. Of Treasury, 383 F.3d 879, 887 (9th Cir. 2004). However, in claiming that American Eagle's proffered non-retaliatory explanation is pretextual, plaintiff relies on the same arguments discussed above, namely that American Eagle gave inconsistent reasons for not hiring plaintiff, relied on subjective criteria, and that plaintiff was objectively more qualified than Siyoum. As discussed above, none of these arguments are persuasive. Furthermore, while courts have held that "temporal proximity" can support an inference of retaliatory motive, here the adverse employment action occurred in 2012, two years after plaintiff filed her EEOC complaint. See also Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("temporal proximity must be 'very close' "); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1035 (9th Cir. 2006) (8-month gap between employee's complaint and his demotion too great to support inference of causation); Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) (18-month lapse too long to create an inference of causation). Accordingly, the Court finds that plaintiff has also failed to raise a genuine dispute of material fact regarding her claim for retaliation in violation of the ADEA and therefore GRANTS American Eagle's motion for summary judgment on this claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'   JS-6**

| Case No. | 2:13-cv-02272-CAS(AFMx) | Date | February 10, 2016 |
|---|---|---|---|
| Title | BEVERLY GOOCH V. AMERICAN EAGLE AIRLINES, INC., ET AL. | | |

## IV.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** American Eagle's motion for summary judgment as to all of plaintiff's claims.[6]

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | CMJ | | |

---

[6] Because the Court grants American Eagle's motion for summary judgment as to all of plaintiff's claims it does not reach American Eagle's additional request for summary judgment as to whether plaintiff may recover punitive damages.  In addition, on January 26, 2016, plaintiff's counsel filed a motion to withdraw as her attorney.  Dkt. 109.  However, in light of this order, the Court DECLINES TO REACH this motion.